UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

WILLIAM DIGIANNI,

                  Plaintiff,

-against-

MICHAEL BLOOMBERG, MAYOR OF NEW
YORK CITY; NEW YORK CITY; NEW YORK
CITY DEPARTMENT OF EDUCATION; and
NEW YORK CITY TEACHING FELLOWS,

                  Defendants.

----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**06 CV 392 (ERK)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff, William Digianni, brings this *pro se* action alleging that defendants discriminated against him based on his disability when they failed to hire him as a New York City Teaching Fellow in violation of Titles I and V of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111-12117, 12201-12210. Plaintiff and defendants cross-move for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] The Honorable Edward R. Korman referred the parties' motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons that follow, I respectfully recommend that defendants' motion for summary judgment should be granted and that plaintiff's motion for summary judgment should be denied.

## BACKGROUND

In August of 2005, plaintiff filled out an online application to become a teacher with the New York City Teaching Fellows Program for Math, Science, and Special Education ("NYCTF" or

---

[1] Defendants gave plaintiff the requisite notice under Local Civil Rule 56.2.

"program"). See Amended Complaint ("Am. Compl.") at 3; plaintiff's application package to the New York City Teaching Fellows Program, annexed to Declaration of Assistant Corporation Counsel Rippi Gill ("Gill Decl.") as Exhibit C. On or about August 18, 2005, plaintiff was pre-screened online and an interview was scheduled. See "Fellow Track" Pre-Screening Form, annexed to Gill Decl. as Exhibit D. Plaintiff's online application for the program was summarized as follows:

> CS [Communication Skills]: A somewhat simplistic but compelling PS [Personal Statement]. Conveys a sincere interest in teaching in city schools. CT [Critical Thinking]: Does not fully address the [illegible] but highlights his work with autistic children and his experience attending NYC public schools. ACH [Achievement]: A GPA slightly below 3 but an ability to manage multiple responsibilities. A clear commitment to working with children. Question: How will he use his previous experience to help raise academic achievement?

Id.

Plaintiff was notified online that he had qualified for the "Second Phase" of the NYCTF interview process, which entails a day-long interview consisting of a question-and-answer session about the program with other candidates, a group session working on a lesson plan, a writing sample, and a one-on-one interview. See Am. Compl. at 3; Deposition Transcript of William Digianni, taken on October 4, 2006, annexed to Gill Decl. as Exhibit B ("Digianni Dep.") at 45-56. Plaintiff was informed that he would have to submit a twenty-minute writing sample in the "Second Phase" of the process and was advised "to call the Program Administrator if I needed special accommodations." Am. Compl. at 3.

Plaintiff advised the NYCTF that he has "a learning disability (verbal-expressive disorder with relative impairment in my working short-term memory)," that he "would need the use of a computer (spell-check and grammar check), double time, and a separate location," and he sent a copy

2

of his "neuropsychoeducational evaluation to inform them of my needs." Am. Compl. at 3-4. See August 19, 2005 email from plaintiff to NYCTF, annexed to Gill Decl. as Exhibit F ("I have learning special disorder, and immediate short term memory difficulty. And according to my evaluation I need the accomadations [sic] of use of a computer with spell check, and grammar check, and double time. Thank you."). The NYCTF afforded plaintiff the accommodations he requested. See Am. Compl. at 4; Digianni Dep. at 46, 51-52.

On September 10, 2005, the NYCTF interviewed plaintiff. See Defendants' Statement Pursuant to Local Civil Rule 56.1(b) ("Defendants' 56.1(b) Statement") ¶ 13. During the day-long interview, NYCTF candidates are tested in various areas, called "competencies." See Final Evaluation Form, annexed to Gill Decl. as Exhibit E ("Final Eval. Form"). Teaching candidates are evaluated in seven "competencies": (1) Critical Thinking ("Analyzes situations thoroughly and generates effective strategies"); (2) Achievement ("Shows a trend of excellence and concrete results in endeavors"); (3) Personal Responsibility ("Assumes accountability for reaching outcomes despite obstacles"); (4) Commitment ("Committed to raising academic achievement in high needs schools"); (5) Constant Learning ("Draws lessons from previous experiences and applies them to future endeavors"); (6) Communications Skills ("Demonstrates effective written and oral skills"); and (7) Response to Environment ("Respectful of and sensitive to norms of interaction in different situations"). Id. In each competency, candidates are rated as either "E" for "Exemplary," "FA" for "Fully Acceptable," "NFA" for "Not Fully Acceptable," or "\" for "No evidence demonstrated." Id. Moreover, the NYCTF Final Evaluation Form states that "[t]o recommend a candidate, he/she must have an E in Critical Thinking, Achievement, OR Personal Responsibility," and that "[i]f the candidate rates NFA in any competency, he/she cannot be recommended." Id.

On his Final Evaluation Form, plaintiff did not "have an E in Critical Thinking, Achievement, OR Personal Responsibility," he rated "NFA" in Communication Skills, and the evaluator checked off "I DO NOT RECOMMEND this candidate for acceptance." Id. The person who evaluated plaintiff wrote:

> I enjoyed meeting this candidate because he was very enthusiastic about teaching and very caring, compassionate and committed. However, I also had the strong feeling that he would not be able to withstand the stress, pressure, negativity and lack of resources that exist in NYC high-needs schools. Candidates [sic] WS [writing sample] was NFA [not fully acceptable] because it was all 1 long paragraph and contained too many sentence fragments. This candidate will be a NYC teacher—he has plans to get his Master's at Brooklyn College—one day, but he does *not* meet the standards of the NYCTF Program. (I thought long and hard about this, but I could not find a way to recommend him and maintain fidelity to the model.)

Id. (emphasis in original).

The NYCTF notified plaintiff by mail and email on September 22, 2005 that he was not accepted into the program. See Defendants' 56.1(b) Statement ¶ 4; Digianni Dep. at 67, 69. Defendants state that plaintiff was not recommended for acceptance into the program "based on his ratings [] and the determination that plaintiff would be unable to manage the stress and pressure of a position with the New York Teaching Fellows Program." Defendants' 56.1(b) Statement ¶ 4.

Plaintiff states that he received

> a letter from NYCTF informing me that I was kicked out of the Program solely because they had "more applicants than positions available" and better luck some place else. (Rosa Parks was told to sit in the back, too. There were seats there, just as well.) They didn't even ask me to reapply for the next session! I got an e-mail to the same effect, repeating once more, their blatant PRETEXT. (NYCTF NEVER gets enough applicants for the [math, science, and special education] positions they were set up for, and that I had specifically applied for . . .) . . . This is discriminatorial PRETEXT. NYCTF lied

4

> to me. The only reason I got dropped from the program was because
> I have a disability. The burden of proof is on THEM, that they did
> not.

Am. Compl. at 4. Plaintiff charges that defendants violated his rights under the ADA when they failed to hire him because of his learning disability. Plaintiff seeks forty million dollars. See Am. Compl. at 7-8.

Plaintiff filed his amended complaint on March 15, 2006. Defendant answered on May 22, 2006 and the parties conducted discovery. Both parties thereafter requested and were granted permission to file the instant cross-motions for summary judgment. Plaintiff argues that the Court should grant his summary judgment motion because defendants gave a pretextual reason for failing to hire him and because plaintiff believes that defendants have the burden of proving that they did not discriminate against him. See Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memo"). Defendants oppose plaintiff's motion and argue that the Court should grant their summary judgment motion because plaintiff is not disabled within the meaning of the ADA and because defendants' reason for not hiring plaintiff was not discriminatory. See Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendants' Memo"). Plaintiff has opposed defendants' motion and defendants have filed a reply.

## DISCUSSION

### I. Standard of Review

Summary judgment should be granted if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting Anderson, 477 U.S. at 248 ); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

"An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation … are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). When a party is proceeding *pro se*, as plaintiff is here, the Court is obliged to "interpret that party's supporting papers liberally, that is, 'interpret them to raise the strongest arguments that they suggest.'" Forsyth v. Federation Employment and Guidance Service, 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins,

14 F.3d 787, 790 (2d Cir. 1994)).

## II. Title I of the Americans With Disabilities Act

The ADA prohibits employment discrimination based on disability, providing that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA incorporates the enforcement powers, remedies, and procedures of Title VII of the Civil Rights Act of 1964. See 42 U.S.C. § 12117 (incorporating 42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9). Courts reviewing discrimination claims under the ADA apply the familiar burden-shifting framework established for Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002) (applying the McDonnell Douglas burden-shifting framework to analyze a claim of intentional discrimination under the ADA).

First, the plaintiff must demonstrate a *prima facie* case of discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). If the plaintiff meets his burden of establishing a *prima facie* case, the burden then shifts to the defendant to articulate evidence that the adverse employment action was taken for a legitimate, non-discriminatory reason. See id. at 506-07; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant successfully does so, the burden of persuasion then shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. Plaintiff bears the ultimate burden to

establish that defendants' adverse action was motivated at least in part by discrimination. Id.

## A. Plaintiff's Disability Discrimination Claim

"A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a *prima facie* case."[2] Ryan v. Grae & Rybicki P.C., 135 F.3d 867, 870 (2d Cir. 1998). In order to demonstrate a *prima facie* case of discrimination under the ADA, plaintiff must show that: (1) the defendant employer is subject to the ADA; (2) the plaintiff suffers from a disability within the meaning of the ADA; (3) the plaintiff could perform the essential functions of the job with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability. Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2002); Wernick v. Federal Reserve Bank of N.Y., 91 F.3d 379, 383 (2d Cir.1996).

Here, defendants do not contest that they are subject to the ADA, see 42 U.S.C. § 12111(5)(A) (defining an "employer" as a "person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year"). Moreover, defendants' refusal to hire plaintiff clearly constituted an adverse employment action. See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d

---

[2] Plaintiff mistakenly asserts that "[t]he only reason I got dropped from the program was because I have a disability. The burden of proof is on THEM, that they did not." Am. Compl. at 4. See also Plaintiff's Statement in Opposition to Defendants' Motion for Summary Judgment at 2 ("After having called me back to the second phase of the interview process, to not call me back for the third phase, the defendant must demonstrate that their reason for doing so was not solely based upon my disability."). On the contrary, plaintiff bears the burden of proving discrimination both at the initial stage of establishing a *prima facie* case of discrimination under the ADA, see Ryan, 135 F.3d at 870, and, if defendants successfully establish that the adverse employment action was taken for a legitimate, non-discriminatory reason, plaintiff bears the ultimate burden of proving that "the proffered reason was merely a pretext for discrimination." Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999).

8

Cir. 2001) ("adverse employment action" is broadly defined and includes "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"). Defendants contest that plaintiff suffers from a disability within the meaning of the ADA, that plaintiff could perform the essential functions of the job, and that plaintiff was not hired because of his disability.

Viewing the facts in the light most favorable to plaintiff,[3] I assume for the purposes of this motion that plaintiff is disabled within the meaning of the ADA.[4] See Bartlett v. New York State Bd. of Law Examiners, 226 F.3d 69, 79 (2d Cir. 2000) (finding an individual disabled under the ADA if he or she has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual") (citing 42 U.S.C. § 12102(2)(A); Bragdon v. Abbott, 524 U.S. 624, 631 (1998)). Even assuming that plaintiff is disabled within the meaning of the ADA, however, he has not demonstrated that he was not accepted as a New York City Teaching Fellow *because of* his disability and therefore plaintiff has not established a *prima facie* case. See Giordano, 274 F.3d at 754 (emphasis added). Moreover, even if plaintiff did establish a *prima facie* case, he has not established that defendants' reason for not hiring him is pretextual.

---

[3] I have considered the "Neuropsychoeducational Evaluation" prepared by Terry L. Tolk, Ph.D., dated April 9 and 13, 2004, attached to plaintiff's January 26, 2006 original complaint, which is incorporated by reference ("Tolk Eval."). Defendants argue that plaintiff cannot "demonstrate that his impairment . . . substantially limits a major life activity," as he claims that it "only affects his ability to read and write, and that he has difficulty verbally expressing himself on paper, and that he tends to need to read a book more than once." Defendants' Memo at 6 (citing to Digianni Dep. at 63-64, 65, 66). However, the Tolk evaluation states that plaintiff suffers from "verbal-expressive disorder" and "immediate short-term memory disorder," and summarizes that plaintiff is "[e]specially affected [in] verbal understanding and processing, and verbal expression, both in oral and written areas," that "[s]hort-term working memory is relatively weak," and that plaintiff's "academic life has long been affected by his verbal learning disorder." Tolk Eval. at 7.

[4] I also assumed plaintiff to be disabled in Digianni v. National Evaluation Systems, Inc., No. 05-cv-4983 (ERK)(LB), slip op. at 11-12 (E.D.N.Y. May 23, 2007).

9

Plaintiff cannot establish that he suffered an adverse employment action *because of* his disability and therefore fails to make out a *prima facie* case of disability discrimination. See St. Mary's Honor Ctr., 509 U.S. at 506; Ryan, 135 F.3d at 870. To show that he suffered an adverse employment action because of his disability, plaintiff "need not prove that disability . . . was the sole cause for the employer's decision," but "only that disability played a motivating role in the decision." Hatzakos v. Acme American Refrigeration, Inc., No. 03-CV-5421 (DLI)(VVP), 2007 WL 2020182, at *7 (E.D.N.Y. July 6, 2007) (quoting Parker v. Columbia Picture Indus., 204 F.3d 326, 337 (2d Cir. 2000)). See also Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100, 108 (2d Cir. 2001) ("[I]t remains essential to a finding of discrimination that plaintiff's disability . . . played a 'substantial' role that 'made a difference' to his employer's actions.") (quoting Fields v. New York State Office of Mental Retardation and Developmental Disabilities, 115 F.3d 116, 120 (2d Cir. 1997)); Gonzalez v. Rite Aid of New York, Inc., 199 F.Supp.2d 122, 130 (S.D.N.Y. 2002) ("The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason.") (quoting Stratton v. Dep't for the Aging, 132 F.3d 869, 878 (2d Cir. 1997)).

Here, plaintiff fails to show that disability "played a motivating role" in defendants' decision not to hire him. Hatzakos, 2007 WL 2020182, at *7. Plaintiff applied to the NYCTF Program online and was granted an interview. See Am. Compl. at 3. He requested accommodations and defendants afforded him the accommodations. See Am. Compl. at 4. Plaintiff underwent a day-long interview, failed to meet the competency requirements applied to all candidates as part of the evaluation process, and, as a result, plaintiff was not hired for the program. See Defendants' 56.1(b) Statement ¶¶ 4, 13; Final Eval. Form. Plaintiff has not shown that defendants hired any other

candidate who, like plaintiff, failed to meet the program's competency requirements. Plaintiff does not allege that any remarks were made by anyone involved in the decision not to hire him from which a reasonable jury could draw an inference of discrimination. The only "evidence" plaintiff offers that defendants' reason was pretextual or that his disability was a motivating factor in defendants' decision not to hire him is that the rejection letter stated there were too many applicants for the job and made no mention of his failure to meet the competency requirements. See Am. Compl. at 4.

The rejection letter plaintiff received does not establish pretext or that plaintiff's disability was a motivating factor in defendants' decision not to hire him. Defendants assert that plaintiff was not hired "based on his ratings [] and the determination that plaintiff would be unable to manage the stress and pressure of a position with the New York Teaching Fellows Program." Defendants' 56.1(b) Statement ¶ 4. Having tested various candidates, defendants were permitted to choose only those they determined to be qualified. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) ("[T]he court must respect the employer's unfettered discretion to choose among qualified candidates," and its "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.") (quotation omitted); Chavez v. Iberia Foods Corp., No. 05 CV 2464 (NG)(RER), 2007 WL 1959028, at *5 (E.D.N.Y. June 29, 2007) ("a business manager may exercise his business judgment to choose freely among qualified candidates"). See also Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986) (an employer may hire based on subjective criteria and need not show that the person hired had "superior objective qualifications, or that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory") (citing Texas Dep't of Comty. Affairs v. Burdine, 450 U.S. 248,

258-59 (1981)).

Moreover, defendants are permitted to maintain their own standards in order to evaluate a candidate's competency. "There is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview." Byrnie, 243 F.3d at 104 (finding employer entitled to use subjective hiring criteria in evaluating discrimination claim of disappointed candidate for a part-time high school teaching position); Gray v. New York State Elec. & Gas, No. 02-CV-6214, 2004 WL 1570260, at *4 (W.D.N.Y. Mar. 29, 2004) ("While some of the reasons proffered by the defendant may seem subjective or even arbitrary to plaintiff, the use of subjective criteria in evaluating job applicants is not unlawful.") (unpublished opinion). As he cannot show that discrimination was a motivating factor in defendants' decision not to hire him into the program, plaintiff fails to make out a *prima facie case* of disability discrimination. See St. Mary's Honor Ctr., 509 U.S. at 506; Ryan, 135 F.3d at 870.

Furthermore, plaintiff offers no evidence that defendants' reasons for not hiring him were pretext for discrimination. After his second phase interview for the program, plaintiff's final evaluation did not include an "E" for "Exemplary" in the categories Critical Thinking, Achievement, or Personal Responsibility, as was required to recommend a candidate. In addition, plaintiff was rated "NFA" for "Not Fully Acceptable" in Communication Skills, specifically precluding him from being recommended. As a result, the evaluator checked off "I DO NOT RECOMMEND this candidate for acceptance," stating that plaintiff "does *not* meet the standards of the NYCTF Program. (I thought long and hard about this, but I could not find a way to recommend him and maintain fidelity to the model.)" Final Eval. Form (emphasis in original). Although the evaluator found plaintiff "very enthusiastic about teaching and very caring, compassionate and committed,"

12

defendants found that plaintiff was not qualified for the NYCTF Program. Final Eval. Form (emphasis added). This assessment of plaintiff's skills was a legitimate, non-discriminatory reason for why defendants did not hire plaintiff.

Plaintiff has not established that defendants' reason was a pretext for disability discrimination. Defendants assert that plaintiff was not accepted to the NYCTF "based on his ratings [] and the determination that plaintiff would be unable to manage the stress and pressure of a position with the New York Teaching Fellows Program." Defendants' 56.1(b) Statement ¶ 4. Plaintiff states that, to the contrary, the letter and email he received on September 22, 2005 informed him that he was not accepted into the program "solely because they had 'more applicants than positions available' . . . This is discriminatorial PRETEXT. NYCTF lied to me. The only reason I got dropped from the program was because I have a disability. The burden of proof is on THEM, that they did not." Am. Compl. at 4.

Plaintiff makes much of the fact that defendants' letter states that he was not accepted because there were too many candidates and makes no mention of his failure to meet the competency requirements specified on the Final Evaluation Form. See Plaintiff's Statement in Opposition to Defendants' Motion for Summary Judgment at 11 ("The defendants have failed to produce evidence that would contradict a finding that their (ever-changing) reason for not calling me back to the third phase was mere pretext."). It is not uncommon or unlawful that an employer will not specify the true reason for a candidate's rejection in a rejection letter. A "nice" rejection letter does not establish that the true reason a candidate was rejected was discrimination and that the proffered reason was a pretext for discrimination. The discrimination laws do not dictate how an employer must word a rejection letter. Here, that the letter given to plaintiff makes no mention of his failure to meet the

13

competency standards for the program does not establish pretext for discrimination. Plaintiff produces no evidence that defendants' competency requirements were employed in a discriminatory fashion or that defendants' actions were motivated by discrimination. Plaintiff's conclusory allegation that defendants rejected him based on discrimination is insufficient to withstand defendants' motion. Therefore, plaintiff's motion for summary judgment should be denied, and defendants' motion for summary judgment should be granted.[5]

## III. Plaintiff's Other Claims

Plaintiff's amended complaint states that "[t]he jurisdiction of this court is invoked pursuant to Title 42, Chapter 126, Subchapter 12112 U.S.C. of the Americans With Disabilities Act of 1973, and 1990 Title I, II, III, and V of Public Law 101-336, against private and public entities, Section 504 of the ADA and the Rehabilitation Act of 1973, and Title VII of the Civil Rights Act of 1964 (Title VII), Section 1981(a), The Americans With Disabilities Act of 1990, as codified, 42 U.S.C. Sections 12112-12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166), and the Fifth and Fourteenth Amendments to the United States Constitution," and that "[j]urisdiction may also be appropriate under 42 USC Sections 1981, 1981(a), 1983 and 1985, as amended by the Civil Rights Act of 1991. Pub. L. No. 102-166, and any other related claims under New York law." Am. Compl. at 1-2. The Court finds no basis for claims under any of the other statutes plaintiff has cited.

The Right to Sue letter plaintiff received from the Equal Employment Opportunity Commission, attached to his amended complaint, only references Titles I and V of the ADA. See

---

[5] As the Court finds that plaintiff does not establish a *prima facie* case of disability discrimination and that even if he did, he fails to show that defendants' legitimate, non-discriminatory reason for not hiring him was pretextual, it need not reach defendants' other grounds for dismissal.

14

Am. Compl., unnumbered pages 9-10. Furthermore, having considered the pleadings in the light most favorable to plaintiff, his amended complaint fails to state a claim under Title V of the ADA, which prohibits retaliatory discrimination against or interference with, coercion of, or intimidation of any individual exercising a right granted under the ADA. See 42 U.S.C. § 12203. Therefore, plaintiff's claim under Title V of the ADA should be dismissed. Plaintiff fails to state a claim under § 1981 as there is no allegation that plaintiff was denied a position based on race. Likewise, plaintiff fails to allege any facts to state a claim under §§ 1983 and 1985. Finally, to the extent that plaintiff's amended complaint alleges any claims under state law, the Court should decline to exercise supplemental jurisdiction over the state law claims since all of plaintiff's federal law claims should be dismissed. See Valencia v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (citing 28 U.S.C. § 1367(c)(3)).

## CONCLUSION

Accordingly, it is respectfully recommended that defendants' motion for summary judgment should be granted, that plaintiff's motion for summary judgment should be denied, and that plaintiff's complaint should be dismissed in its entirety. It is further recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from a judgment entered herein would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: November 28, 2007
　　　　Brooklyn, New York